# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENZEL ELAINE JOLIFF, | Case No.: 1:16-cv-01058-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Denzel Elaine Joliff ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DBI") under Title II of the Social Security Act.[1] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

---

[1] Nancy A. Berryhill is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.

1

**FACTS AND PRIOR PROCEEDINGS**

On September 10, 2012, Plaintiff protectively filed an application for disability insurance benefits. AR 156-57, 158-61.[2] Plaintiff alleged that she became disabled on May 5, 2012, due to emphysema, chronic asthma and chronic bronchitis. AR 158, 173. Plaintiff's application was denied initially and on reconsideration. AR 90-93, 97-101. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Cynthia Floyd held a hearing on December 4, 2014, and issued an order denying benefits on February 13, 2015. AR 15-26, 31-70. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-6, 14. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on December 4, 2014, in Fresno, California. AR 31-70. Plaintiff appeared with her attorney, Lars Christenson. Impartial Vocational Expert ("VE") Thomas Dachelet also appeared. AR 33.

In response to questioning by the ALJ, Plaintiff testified that she was 56 years old at the time of the hearing, and lived with her husband, her daughter and daughter's husband, and her granddaughter. Plaintiff's husband works, but she receives no other sources of income. She has received worker's compensation on two occasions in the past, one for knee surgery and one for a head injury. AR 35-38.

Plaintiff reported that she has a driver's license with no restrictions, but she does not drive very often. She has a twelfth grade education with some college. She was trained as a vet tech on the job in 1988. She has not worked since May of 2012. She last worked in a pet grooming shop as a dog bather. AR 39-40. Prior to that, she was a vet tech and surgery assistant at a spay-and-neuter clinic. AR 41-42.

When asked about what prevented her from working, Plaintiff testified that she constantly experiences shortness of breath and anything can cause an asthma attack. She needs to avoid wetness and humidity, along with dust and irritants in the air. AR 44-45.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

In response to questioning by her attorney, Plaintiff testified that she has breathing attacks any time she exerts herself, such as doing dishes or laundry. She also cannot sleep because of dust and wears a mask to vacuum. She gets very tired. In an hour, she would probably have to take five or six breaks because she gets winded. She needs to rest about 10 or 15 minutes. If she has an asthma attack, then she is done for the whole day. It wipes her out and she has to sleep. AR 45-47.

When asked to describe a typical day, Plaintiff testified that she will do chores one day and rest the next day. Plaintiff affirmed that she was able to do everything, but she just had to take breaks all the time. She takes naps during the day, sometimes thirty minutes or more. She feels really tired and cannot stay awake. She uses an inhaler to help with her breathing four times a day, but will also use it when she is having an attack. On her worst days, she uses the inhaler six times. AR 48-51. Plaintiff reported that she recently saw a cardiologist for a stress test, which did not last very long. Plaintiff had never seen a cardiologist before, but heart problems run in her family. AR 52.

When asked by the ALJ about her medications, Plaintiff testified that she uses an Advair Diskus inhaler twice a day, along with another inhaler once a day. She also takes Bupropion for stress, which calms her down. AR 53-54. When asked about emergency treatment for her asthma, COPD or emphysema, Plaintiff denied such treatment since May 2012, explaining that she is scared of the hospital. AR 54. However, Dr. Douglas Owen has been her doctor, and she last saw him in September for her yearly physical, and he did not order any changes to her medication. AR 55-56.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Thomas Dachelet. The VE testified that Plaintiff's past work was classified as animal caretaker and veterinarian assistant. AR 57-59. The ALJ also asked the VE hypothetical questions. For all of the hypotheticals, the ALJ asked the VE to assume an individual with the same vocational profile as Plaintiff and an eight-hour workday. For the first hypothetical, the ALJ asked the VE to further assume a person with the following residual functional capacity: must avoid concentrated exposure to respiratory irritants such as fumes, odors, dust, gasses, chemicals, poor ventilation, wetness and humidity. The VE testified that this person could not perform Plaintiff's past work, but could perform other work, such as bagger, package sealer machine operator and checker of laundry, AR 59-61.

For the second hypothetical, the ALJ asked the VE to assume the same residual functional capacity, but this person could lift and carry up to 50 pounds occasionally, 25 pounds frequently and must avoid moderate exposure to the respiratory irritants previously described in hypothetical one. The VE's response was the same as for hypothetical one regarding other work. AR 61.

For the third hypothetical, the ALJ asked the VE to assume the same residual functional capacity as hypothetical two, but this person could lift and carry up to 20 pounds occasionally, and up to 10 pounds frequently, along with all other previously described restrictions. The VE testified that this person could perform other work, such as palletizer, garment sorter and package operator. AR 61-62.

For the fourth hypothetical, the ALJ asked the VE to assume the same residual functional capacity as described in hypothetical number two (medium), but this person could occasionally climb ramps and stairs, ladders, ropes and scaffolds. The VE testified that this person could not perform Plaintiff's past work, but could perform other jobs such as bagger, package sealer, and checker. AR 62-63.

For the fifth hypothetical, the ALJ asked the VE to assume the same residual functional capacity as described in hypothetical number three (light), along with the climbing restriction at occasional. The VE testified that the jobs he offered are not impacted. AR 63.

For the sixth hypothetical, the ALJ asked the VE to assume a person that, within an eight-hour workday, must lie down or recline two hours at a time, sit for no more than one hour at a time, stand for no more than thirty minutes at a time, walk no more than 10 minutes at a time, stand and walk about four hours total in an eight-work day, take unscheduled breaks every hour for twenty minutes, occasionally lift and carry up to 10 pounds, but never climb stairs, ladders, scaffolds, ropes or ramps, and would likely be off task 30 percent of the work day and absent about five days or more per month. The VE testified that there would be no work for this person. AR 63-66.

Following the ALJ's questioning, Plaintiff's counsel asked the VE whether Plaintiff had any transferable skills from her past work. The VE testified that she would not. Plaintiff's counsel also asked the VE a seventh hypothetical. For that hypothetical, counsel asked the VE to assume a person with the exertional limitations of pulmonary irritants and moderate exposure from hypothetical one,

but add a twenty-minute break every hour. The VE testified that this person would not be available to work. AR 66-67.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 15-26. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since May 5, 2012, her alleged onset date. AR 20. Further, the ALJ identified chronic obstructive pulmonary disease ("COPD"), emphysema, asthma and chronic bronchitis as severe impairments. AR 20-21. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 21. Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, including lifting and carrying 50 pounds occasionally and 25 pound frequently and should avoid even moderate exposure to respiratory irritants, such as fumes, odors, dusts, chemicals, wetness and humidity. AR 21-24. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 24-25. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 25-26.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be

considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## **DISCUSSION**[3]

Plaintiff contends that the ALJ erred by (1) failing to provide clear and convincing reasons to reject the opinion of Plaintiff's treating physician, and (2) failing to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints.

### I. The ALJ Did Not Err in Evaluating the Treating Physician's Opinion

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject the assessment of her treating physician, Dr. R. Douglas Owen. (Doc. No. 10 at pp. 4-10.)

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

According to the record, on April 28, 2014, Dr. Owen completed a Physical Residual Function Capacity Statement form, which identified Plaintiff's diagnosis as COPD with symptoms that included shortness of breath. AR 320-323. Dr. Owen opined that Plaintiff's condition was severe enough to frequently interfere with the attention and concentration needed to perform simple work tasks, and she would be off task approximately 30% of an 8-hour workday. AR 320, 323. Dr. Owen further opined that Plaintiff could not walk one city block or more without rest, but could climb steps slowly without the use of a handrail. She did not have any problems with balance, stooping, crouching or bending, but would need to lie down or recline for 2 hours during an 8-hour workday. She could sit for 1 hour at a time, stand for 30 minutes at a time, and walk 10 minutes at a time, and could sit only about 4 hours and stand and walk only about 4 hours in an 8-hour workday. AR 321-22. Dr. Owen also opined that Plaintiff would need hourly unscheduled breaks lasting 20 minutes. Plaintiff could occasionally lift or carry less than 5 pounds, 5 pounds and 10 pounds, but could rarely lift or 15 or 20 pounds. AR 322. She could not climb stairs, ladders, scaffolds, ropes or ramps. AR 323. Dr. Owen estimated that Plaintiff would likely be absent from work 5 days or more per month, would likely be unable to complete an 8-hour workday 5 days or more per month, and could be expected to perform a job on a sustained basis with only 60% efficiency. Dr. Owen believed that Plaintiff would be unable to obtain and retain work in a competitive work environment, 8 hours per day, 5 days per week. AR 323.

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons to reject Dr. Owen's opinion that she could not lift 20 pounds, but could occasionally lift 10 pounds, would need unscheduled breaks during the day and could walk for up to 10 minutes at a time. (Doc. 10 at p. 6). The Court disagrees.

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and

7

convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.*

In this instance, Dr. Owen's opinion was contradicted by the state agency physicians, both of whom opined that Plaintiff only had environmental limitations to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. AR 76, 86. Thus, the ALJ could reject the treating physician's opinion by providing specific and legitimate reasons supported by substantial evidence. The Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence to reject Dr. Owen's opinion. Although Plaintiff contends that the ALJ could not reject Dr. Owen's opinion based only on the opinion of the state agency physicians, it is evident from the record that the ALJ did not rely on the state agency physician opinions alone to assign little weight to Dr. Owen's opinion.

First, the ALJ primarily discounted Dr. Owen's opinion that Plaintiff was unable to obtain and maintain work in a competitive work environment because it was unclear whether or not Dr. Owen was familiar with the definition of disability in the Social Security Act and its regulations and because the ultimate determination of disability is specifically reserved to the Commissioner. AR 23. A treating physician's opinion that a claimant is disabled or unable to work or is not a "medical opinion," but rather a question reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d), (d)(1); *see also Sager v. Colvin*, 622 Fed.Appx. 629 (9th Cir. 2015) (unpublished) (ALJ did not improperly reject opinion of treating physician that claimant was unable to work because opinion as to whether a claimant is "unable to work" is not a matter of medical opinion, but "rather a question reserved to the ALJ"); *McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citation omitted); *Jackson v. Colvin*, 1:14-cv-01573, 2016 WL 775929, at *10 (E.D. Cal. Feb. 29, 2016) (ALJ fully justified in rejection physician's conclusion that claimant was unable to work because it was an issue reserved to the Commissioner). Thus, the Court finds that the ALJ provided a specific and

legitimate reason to reject Dr. Owen's opinion regarding Plaintiff's employability and whether she was disabled from her usual and customary employment.

Second, the ALJ discounted Dr. Owen's opinion because it was unsupported by objective medical evidence and treatment records. AR 22, 23. An ALJ may properly discount a treating physician's opinion that is not supported by the medical record, including the physician's own treatment notes. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting treating physician's opinion); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("incongruity" between doctor's questionnaire responses and her medical records provided specific and legitimate reason for rejecting doctor's opinion); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings"); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Here, the ALJ determined that Dr. Owen's opinion was "without substantial support from the other evidence of record." AR 23. For instance, clinical records from Dr. Greg Warner, also a treating physician, showed normal pulmonary function tests and improvement with medication in July and October 2012, along with good lung capacities in April 2013. AR 22, 266, 273, 276. In September 2013, Plaintiff exhibited wheezing and prolonged expiratory time, but reported more trouble with fires in the area and a lack of medication. AR 306-07. Dr. Warner repeatedly described Plaintiff as "an environmental reactor," because her pulmonary function tests were fairly normal and she had "more asthma/chronic bronchitis," which he believed was easily treatable. AR 273, 275, 276, 278, 306.

The ALJ also found that Dr. Owen's own reports failed "to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." AR 23. According to Dr. Owen's treatment notes, in February 2013, Plaintiff was "[d]oing fairly well" and spirometry with FVC showed "MUCH" improvement. Dr. Owen also noted marked improvement and

Plaintiff's lungs were clear on examination. AR 22, 289-90. In May 2013, Plaintiff again was doing fairly well, with clear lungs on examination, and the values on spirometry were "excellent." AR 291-92. In August 2013, Plaintiff was "[d]oing fairly well" with no reported problems. AR 22, 315-16. In December 2013, chest x-rays ordered by Dr. Owen revealed no acute cardiopulmonary process. AR 22, 312. In April 2014, Plaintiff's oxygen saturation was 99% and pulmonary function testing noted an FVC of 88% and an FEVI of 89%. AR 23, 310-11. The ALJ properly considered that these treatment records failed to reveal significant clinical and laboratory abnormalities, and did not support Dr. Owen's extreme limitations, such as limited lifting, sitting and standing. AR 23. In addition, the ALJ considered that this course of treatment had "not been consistent with one would expect if the claimant were truly disabled." AR 23. "Where a treating physician recommends a course of treatment inconsistent with his/her opinion of total disability, an ALJ may rely on that inconsistency to discount the physician's opinion." *Winslow v. Berryhill*, No. CV 16-07309-KES, 2017 WL 5564522, at *10 (C.D. Cal. Nov. 17, 2017) (citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("These are not the sort of description and recommendations one would expect to accompany a finding that [the claimant] was totally disabled under the Act")).

Plaintiff asserts that if the ALJ believed that Dr. Owen's opinion was unsupported by the record, then the ALJ should have re-contacted Dr. Owen. Doc. 10 at pp. 8-9. To the extent Plaintiff contends that the ALJ failed to fully and fairly develop the record, this contention is not persuasive. An ALJ's duty to develop the record is triggered if there is ambiguous evidence or the record is inadequate for proper evaluation of evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). When such a duty is triggered, an ALJ can develop the record by: (1) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines the ability to resolve the disability issue; (2) subpoenaing or submitting questions to the claimant's physicians; (3) continuing the hearing; or (4) keeping the record open for more supplementation. *Tonapetyan*, 242 F.3d at 1150; 20 C.F.R. § 404.1517.

Here, the ALJ's duty to develop the record further was not triggered. There is no indication that the record was ambiguous or inadequate, and the ALJ was able to consider record evidence from Dr. Owen. Further, the ALJ kept the record open after the hearing for additional medical records. AR

34. The fact that the ALJ kept the record open after the hearing for Plaintiff to submit additional evidence is sufficient to satisfy any duty to develop the record. *Tonapetyan*, 242 F.3d at 1150; *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ's indication to plaintiff and her counsel that he would keep the record open so that they could supplement her doctor's report satisfied ALJ's duty to develop the record).

Based on the above, the Court finds that the ALJ did not commit reversible error in evaluating Dr. Owen's opinion.

## II. The ALJ Did Not Commit Reversible Error in Evaluating Plaintiff's Subjective Testimony

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints, and contends that the ALJ's subjective pain analysis is boilerplate and does not satisfy the clear and convincing standard. (Doc. No. 10 at pp. 10, 11.)

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.[4]

Here, the ALJ found that Plaintiff satisfied the first step of the analysis and made no finding of malingering. At the second step of the analysis, however, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . ." AR 24. Therefore, the ALJ's reasons for discounting the alleged severity of Plaintiff's

---

[4] At the time of the ALJ's decision, Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, was in effect and explained the factors to be considered in assessing credibility. SSR 96-7p was superseded on March 28, 2016, by SSR 16-3p, 2017 WL 4790249. However, an adjudicator will apply SSR 16-3p only when making decisions on or after March 28, 2016, and federal courts will review that decision using the rules that were in effect at the time the decision issued. *Id.* at 49468, n. 27. The decision in this case was rendered prior to March 28, 2016, before SSR 16-3p became effective.

11

symptoms must be specific, clear and convincing. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015).

The Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's testimony. First, the ALJ noted that Plaintiff had "not received the type of medical treatment one would expect for a person alleging such incapacitating symptoms" and that her treatment had been relatively routine and/or conservative in nature. AR 24. An ALJ may properly consider evidence of conservative treatment in evaluating complaints of disabling symptoms. Plaintiff's relatively conservative treatment was also a proper consideration. *See Tommasetti*, 533 F.3d at 1040 (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). The ALJ correctly observed that Plaintiff had no emergency room visits or hospitalizations for breathing issues, and that she had been treated conservatively and generally successfully with medication. AR 24.

Second, the ALJ discounted Plaintiff's credibility based on the objective medical record. AR 24. Although lack of medical evidence cannot form the sole basis for discounting a claimant's testimony, it is a factor that the ALJ can consider. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ noted that the record included "normal or very mild findings." AR 24. As discussed above, the ALJ's determination that Plaintiff's treatment records failed to reveal significant clinical and laboratory abnormalities is supported by substantial evidence.

Third, the ALJ found that Plaintiff's treatment had "been generally successful in controlling [her] symptoms." AR 24. A claim of disabling condition undermined when disability is controlled by medication. *Tommasetti*, 533 F.3d at 1040; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (holding that impairments that can be controlled effectively with medications are not disabling). The ALJ's conclusion that Plaintiff's condition had been successfully controlled with medication is supported by substantial evidence in the record. Dr. Warner, whom Plaintiff describes as a pulmonary expert, noted improvement with medication, commenting in April 2013 that Plaintiff's medications "really have helped her." AR 273. Dr. Owen also repeatedly noted in 2013 that Plaintiff

was doing fairly well with her current medications, with no reported problems or adverse effects.  AR 289, 291.

Based on the reasons, the Court finds that the ALJ did not err in his assessment of Plaintiff's subjective complaints.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Denzel Elaine Joliff.

IT IS SO ORDERED.

Dated: **March 1, 2018**         /s/ *Barbara A. McAuliffe*
                            UNITED STATES MAGISTRATE JUDGE